**ANTCO SHIPPING COMPANY, Ltd.,
Plaintiff,**

**v.**

**YUKON COMPANIA NAVIERA, S.A.,
Defendant.**

**No. 70 Civ. 2738.**

United States District Court,
S. D. New York.

Oct. 6, 1970.

Healy & Baillie, New York City, for plaintiff; Nicholas J. Healy, Jr., New York City, of counsel.

Cardillo & Corbett, New York City, for defendant; Robert V. Corbett, New York City, of counsel.

### MEMORANDUM

TENNEY, District Judge.

Defendant Yukon Compania Naviera, S.A., (hereinafter referred to as "Yukon") moves pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter referred to as the "Supplemental Rules"), and Fed.R.Civ.P. 12(b) to vacate an allegedly illegal maritime attachment and dismiss the instant complaint on the grounds of insufficiency of process, lack of in personam jurisdiction, and because another identical cause of action is pending in the United States District Court in Massachusetts.

From the papers before me it appears that Crestwood Shipping Agencies, Inc. (hereinafter referred to as "Crestwood"), a corporation organized under the laws of New York and maintaining a business office in this district, is the general agent for defendant Yukon. On

June 30, 1970, Crestwood and the Atlantic Bank of New York (hereinafter referred to as the "Bank") were served with: 1) a Process of Maritime Attachment and Garnishment; 2) a complaint alleging that defendant breached a charter agreement; 3) a Summons to Show Cause Why Intangible Property Should Not Be Paid Into Court; and 4) a Marshal's Notice of Attachment informing Crestwood and the Bank that Yukon's credits and funds had been attached.

The controversy underlying the instant motion is an alleged anticipatory breach of charter party by Yukon as owner of the vessel "S/T VEGA" (hereinafter referred to as "VEGA"). It further appears that plaintiff Antco Shipping Company, Ltd. (hereinafter referred to as "Antco") has commenced additional litigation against defendant and its vessel in Massachusetts by arresting the "VEGA". Although plaintiff has alleged damages in the amount of $3,000,000 in both actions, Yukon was permitted to post a $900,000 bond with the Massachusetts District Court in order to release the "VEGA" from arrest.

Defendant, relying on Rule B of the Supplemental Rules—which, in pertinent part, provides:

> "With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district."

—urges that the attachment was illegally made since defendant could be "found within the district".

In support of its position that it could have been found herein, defendant has offered the following, essentially undisputed, facts. The charter party in issue was entered into in this district and was signed by James G. Page, Assistant Secretary of Crestwood, for and on behalf of Yukon.[1] Clause 35 of said charter specified that any notice required to be given be addressed to the owner or to the "Owner's Agent, Crestwood * * * 29 Broadway, New York, New York 10006."[2] In addition, it was agreed that the charter payments be paid to the bank in New York "For credit to: Crestwood * * * 'VEGA' Acct. #: 02–061–988."[3] Defendant contends that its presence within this district is further evidenced by the fact that various communications exchanged between plaintiff and Crestwood during the course of the charter were often signed by or addressed to Crestwood as agent for Yukon.[4]

Finally, in an affidavit furnished at the Court's request, Yukon's president, Harry Panagopulos, states that Crestwood, as agent for Yukon, "conduct[s] all business on behalf of Yukon relating to the maintenance and operation of the 'VEGA' in New York, including the vessel's chartering and operation."[5] In addition, Crestwood "collects money for Yukon's account in New York, receives cargo and personal injury claims arising out of the operation of the 'VEGA', pays crews' wages and advances cash to the Master when the vessel is in New York and the United States."[6] Mr. Panagopulos has also affirmed that the vessel has at various times docked at the Port of New York, whereupon Crestwood would act as Yukon's agent.[7] The Court is mindful that affiant has not been specific either as to whether the "VEGA" docked in this district or in the Eastern District, since the Port of New York extends to both districts, or as to when and where the previously

---

1. Pltf. Exh. A, Annexed to Complaint (filed June 26, 1970.)

2. *Id.* at ¶ 35.

3. *Id.* at ¶ 4.

4. Def. Exh. 5, Annexed to Affid. of James G. Page (dated July 23, 1970).

5. Affid. of Harry Panagopulos, at 1–2 (dated August 26, 1970).

6. *Id.* at 2.

7. *Id.*

noted activities were conducted by Crestwood for Yukon in this district. In concluding the affidavit, defendant's president has, of course self-servingly, asserted that Yukon is willing to appear generally to defend against plaintiff's claim provided proper service is effected upon its agent Crestwood.[8]

Predicated upon the foregoing and other facts purportedly indicating plaintiff's knowledge of the agency between defendant and Crestwood, Yukon contends that Antco, before resorting to the more drastic remedy of foreign attachment, was obligated to first attempt service of a summons upon Crestwood in order to obtain personal jurisdiction over Yukon. Implicit in this contention is the corollary that the attachment under Supplemental Rule B was improper because the defendant could be, found within this district.

Although plaintiff does not dispute that Crestwood was Yukon's agent in this district for certain purposes, it earnestly disagrees with defendant's contention that the existence of this agency constitutes sufficient presence herein to warrant a finding under Rule B that defendant can be "found within this district".

In support of its position, plaintiff enumerates the following factors as being indicative of defendant's absence from this district within the meaning of Supplemental Rule B: 1) defendant maintains no office or place of business herein and is not licensed to conduct business in this state; 2) defendant is neither listed in the Manhattan telephone directory nor in the directory of the building in which its agent Crestwood maintains its office; 3) Yukon's name does not appear on the door to the agent's office; and 4) there are no officers or directors of defendant residing or transacting business within this district.

In sum, plaintiff contends that Yukon is essentially a "one-ship" Panamanian corporation, which, for tax purposes, maintains no presence and conducts no business either within this district or the United States.

Before discussing the law applicable to the instant motion, one further observation should be made. Since plaintiff has alleged damages amounting to approximately $3,000,000, defendant's contention that the $900,000 bond posted in the Massachusetts action amply secures plaintiff's claim is obviously unsound. In view of the fact that the difference between the bond posted and the alleged damages is approximately $2,100,000, it is unreal to suggest that plaintiff's claim is "secured".

Although Supplemental Rule B provides no litmus test method for determining when a "defendant shall not be found within the district", there is ample judicial authority defining this phrase. When presented with a foreign corporate defendant, inquiry should first be directed at whether it can be found within the district for jurisdictional purposes and, second, whether it can be found herein for service of process. Seawind Compania, S.A., v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963); United States v. Cia Naviera Continental S.A., 178 F.Supp. 561, 563 (S.D.N.Y.1959). With regard to the second issue, there can be little doubt that Yukon could be found within this district for service of process under Fed.R.Civ.P. 4(d) since service could properly have been made upon Crestwood, its managing and general agent in New York. Seawind Compania, S.A., v. Crescent Line, Inc., *supra* 320 F.2d at 582.

■ Having concluded that service could properly have been made upon Crestwood, the Court still must be satisfied that defendant is subject to this Court's personal jurisdiction, since it is well established that the mere known presence of an agent authorized to accept process does not, by itself, preclude foreign attachment. Seawind Compania,

8. *Id.* at 3–4.

S.A., v. Crescent Line, Inc., *supra* 320 F. 2d at 583.

Mindful of the view expressed by the Court of Appeals in *Seawind, supra* 320 F.2d at 583, that when a contract is both entered into and allegedly breached by a foreign corporation within this district, said corporation is "clearly * * subject to suit in New York, even in the absence of a resident agent expressly authorized to accept process", this Court has requested that the parties furnish additional affidavits and exhibits pertinent to determining the situs of the alleged anticipatory breach.

Attorneys for both sides have complied with the request by submitting substantially identical exhibits annexed to affidavits neatly polarizing their respective views as to where the alleged breach occurred. Plaintiff's attorneys contend that since the "VEGA" was arrested in Massachusetts, the alleged breach occurred in that state.

I find plaintiff's position untenable because almost all of the relevant communications and correspondence between the parties indicate that the alleged anticipatory breach occurred in this district.

It appears that as a result of a tugboat strike in New York harbor in February of this year, plaintiff requested that the "VEGA" be docked without the assistance of tugboats and agreed to indemnify Yukon for any damages resulting from this unassisted docking.[9] During the course of this docking, the vessel was grounded and suffered substantial damages. After removal from the ground the "VEGA" collided with a barge in New York harbor.

On June 5, 1970, Crestwood sent a letter to Antco's New York office requesting that it be paid, under the prior agreement, for the damages sustained by the "VEGA" as a result of the docking in February without the assistance of a tugboat.[10] On June 16th, representatives of plaintiff and defendant met in Crestwood's office, located in this district, in order to discuss the status of the repairs and defendant's June 5th request for payment therefor. At that meeting, Yukon apparently intimated that unless plaintiff made the requested payments the vessel would be taken out of plaintiff's service. Two days later, after another fruitless meeting between the parties, a representative of plaintiff handed Yukon's president a letter, which essentially embodied the terms of a proposed compromise.[11] In another letter, dated June 19, 1970, from plaintiff's attorneys to Crestwood, it was acknowledged that the parties were deadlocked and that plaintiff understood defendant's position to be that it would withdraw the vessel from Antco's service if its demands were not complied with.[12] Plaintiff's attorneys further advised Crestwood that Antco rejected the owner's ultimatum and that unless they were assured that the "VEGA" would remain in service to the charterer (notwithstanding charterer's rejection of owner's demands) they would "conclude that [the] Owners intend[ed] to withdraw the Vessel and * * * [would] take * * * appropriate steps to protect * * * [Charterer's] interests." [13]

If, at this point, there exists any doubt as to where the alleged breach occurred, it should quickly be dispelled by a letter from plaintiff's attorneys to Crestwood, informing it that they have "concluded that Owners are withdrawing the vessel from Charterer's service" and that in order to protect the Charterer's interests had the "VEGA" arrested and

---

9. Letter from Antco to Yukon, dated February 2, 1970, Def. Exh. 5, Annexed to Notice of Motion (filed July 24, 1970).

10. Pltf. Exh. A, Annexed to Affid. of Nicholas J. Healy, Jr. (dated Sept. 23, 1970).

11. Pltf. Exh. B, Annexed to Affid. of Nicholas J. Healy, Jr. (dated Sept. 23, 1970).

12. Pltf. Exh C, Annexed to Affid. of Nicholas J. Healy, Jr. (dated Sept. 23, 1970).

13. *Id.*

attached on a "complaint alleging an anticipatory breach of Charter." [14]

In view of the facts that all negotiations, correspondence and communications with regard to the alleged anticipatory breach occurred in this district, and that defendant never withdrew the "VEGA" from plaintiff's service, it is inconceivable how it can seriously be suggested that the alleged breach occurred in Massachusetts where the vessel is located. The alleged anticipatory breach, coupled with the "VEGA's" arrest in Massachusetts, effectively prevented defendant from withdrawing the vessel from plaintiff's service.

█ Having determined that defendant may be found within this district within the meaning of Supplemental Rule B, it is unnecessary to consider the other grounds set forth by defendant for vacating the foreign attachment.

Accordingly, and for the foregoing reasons, defendant's motion to vacate the attachment and dismiss the complaint is granted, but upon condition that the order to be entered hereon contain a provision that defendant will appear generally and raise no issue as to this court's jurisdiction over its person.

Submit order on notice in accordance herewith.

14. Pltf. Exh. E, Annexed to Affid. of Nicholas J. Healy, Jr. (dated Sept. 23, 1970).