**INTEGRATED CONTAINER SERVICE, INC., et al., Plaintiffs,**

**v.**

**STARLINES CONTAINER SHIPPING, LTD., et al., Defendants.**

**No. 79 Civ. 3345.**

United States District Court, S. D. New York.

Aug. 3, 1979.

---

Ober, Grimes & Shriver, Baltimore, Md., for plaintiffs, by John T. Ward, Kieron F. Quinn, James B. Wieland, Baltimore, Md.

Halley & Chalos, New York City, for defendants and garnishees, by Michael G. Chalos, New York City.

## MEMORANDUM ORDER

LEVAL, District Judge.

Defendants Starlines Container Shipping, Ltd. ("Starlines Container") and Starlines Shipping Co., Inc. ("Starlines Shipping") and garnishees Kane, Halley & Chalos, move pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules") to vacate a writ of maritime attachment on the grounds that defendants are "found within the district" within the meaning of Supplemental Rule B(1) and that the claim is not a maritime or admiralty claim. The defendants move also to dismiss the complaint on the grounds that an identical cause of action is pending in the United States District Court for the Eastern District of Louisiana.

Each of the three plaintiffs, being a lessor under a container lease agreement made with one or more of the Starlines defendants, is suing to recover damages for breach. The actions were commenced by securing a maritime attachment over property of the defendants which the latter here seek to set aside.

■ A maritime attachment is precluded under Admiralty Rule B(1) only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise *in personam* jurisdiction over the defendants (hereafter referred to as presence in the jurisdictional sense), *and* in addition can be found within the geographical confines of the district for service of process. *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580, 582 (2d Cir. 1963); *Antco Shipping Co., Ltd. v. Yukon Compania Naviera, S.A.,* 318 F.Supp. 626 (S.D.N.Y.1970). Thus the attachment will lie unless the defendant is present in the district in both senses.

■ An attachment under the Admiralty Rule serves two purposes: (1) to obtain jurisdiction of the defendant *in personam* through his property, and (2) to secure a fund out of which a judgment may be satisfied. *Seawind Compania, S.A. v. Crescent Line, Inc., supra,* 581–82.

■ The test is quite arbitrary in its specification of the circumstances in which the maritime attachment may be used. No matter how convincingly demonstrated the plaintiff's need for security, it will not authorize attachment against a defendant who is present in the district in both senses. On the other hand, the fact that a defendant can be subjected to the court's *in personam* jurisdiction by virtue of the presence of a resident agent for service of process will not suffice to defeat the attachment if the defendant is not otherwise present in the district in the jurisdictional sense; nor will the fact that the defendant is present in the jurisdictional sense suffice, if he cannot be found for service of process within the district. This test amounts to a somewhat arbitrary compromise which assumes that the plaintiff will not require the protection of an attachment for security, nor should the defendant be subjected to it, if the defendant is present in both senses, and assumes on the other hand that the plaintiff's interests are not adequately protected despite the ability to perfect *in personam* jurisdiction if the defendant is not present in both senses.

The relevant facts are as follows:

Taking first those which favor the attachments: The defendants are foreign corporations, the principal lessee being incorporated in Liberia. It is conceded that since March 31, 1979, three months before the plaintiffs secured these attachments, the Starlines companies have ceased to do business and Starlines Shipping has closed its New York office and disconnected its telephone in New York. Apparently no Starlines employees have been present in New York since that date.

The facts upon which the defendants rely in seeking to defeat the attachments are as follows:

Starlines Shipping is authorized to do business in New York pursuant to a certificate of authority under § 1304 of the New York Business Corporation Law, which remains on file and in effect. That certificate authorizes service of process on the Secretary of State of the State of New York. The lease agreements in question were negotiated and signed for the Starlines lessees in New York by Starlines Shipping, 77 Water Street, New York, New York, as their agent. Two agreements called for submission to the jurisdiction of the courts of New York; the third called for submission to arbitration in New York with New York law to apply. One of the agreements authorized service of process on the lessees by certified or registered mail sent to the lessees in care of Starlines Shipping at its Water Street address. Defendants point also to the fact that the Starlines companies have attorneys in New York which are representing them in connection with several litigations.

Defendants contend that their presence, in the *International Shoe* sense,[1] is satisfied, as to this cause of action if not for others, by the fact that the contracts here in question have such substantial connections with New York. Thus, despite the absence of any defendant personnel, or of any continuing defendant activity in New York, plaintiffs would be able under the New York long-arm statute to bring the defendants within the New York court's jurisdiction.

Professor Moore points out that a finding of "presence" based exclusively on prior activity does not give logical support to the assumption that the security of an attachment is not needed. Moore therefore argues, quite persuasively in my view, that prior contacts which might be sufficient to satisfy the exercise of personal jurisdiction in accordance with due process, should not be deemed to satisfy the required finding of presence in the jurisdictional sense to defeat a maritime attachment. See 7A Moore's *Federal Practice* ¶ B.06 n. 28 (2d ed. 1978).

The Court of Appeals for the Second Circuit, however, in the *Seawind* case seems to imply that the presence which there resulted from the prior contractual contacts would have been sufficient to defeat the attachment, even absent continuing local activity or personnel. If so, the defendants here appear to have narrowly satisfied that branch of the test, although their presence is predicated almost entirely on previous activity. *See also Antco Shipping Co., Ltd. v. Yukon Compania Naviera, S.A., supra.*

Turning now to the other branch of the test, defendants contend that they can be found within the district for service of process in several respects.

■ *First*, defendants argue that the service requirement is satisfied by the express provision of one of the three lease contracts calling for service of process upon the agent Starlines Shipping at its 77 Water Street, New York, N.Y. address. This argument is insufficient. The plaintiffs' affidavit asserts that plaintiffs attempted to mail notice to the agent at the Water Street address and that the mail was returned as undeliverable, the agent having closed and vacated its New York office. Even if argument can be made that service in accordance with the contract on the no-longer-extant agent is sufficient, that possibility should not defeat the attachment. While a plaintiff must make reasonable efforts to serve a defendant before pursuing the attachment route, *see Seawind Compa-*

---

1. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

nia, S.A. v. Crescent Line, Inc., supra, the plaintiff should not be required to rely on a speculative service accomplished in a manner which it knows will not give actual notice. In any event, this argument is largely academic. Since such a provision is contained in only one of the contracts sued on, it would not serve to defeat the attachment of the two plaintiffs whose suits are not brought under that contract.

Second, defendants argue that the service requirement is satisfied by plaintiffs' ability under Federal Rule Civ.P. 4(f) to institute the action in the Southern District of New York by service, pursuant to the agent's designation, upon the Secretary of State of New York in Albany.

The Court of Appeals in Chilean Line, Inc. v. United States, 344 F.2d 757 (2d Cir. 1965), reviewing the preliminary draft of the proposed amendments to the Rules of Civil Procedure, speculated in dictum that application of Federal Rule 4(f), enabling process to be served throughout the state, might be held in the future to narrow the availability of the maritime attachment. See also United States v. Cia Naviera Continental, S.A., 178 F.Supp. 561, 564 n. 7 (S.D.N.Y.1959).

However, the drafters did not adopt such a rule in the final draft of Admiralty Rule B. The Advisory Committee's Note of 1966 to Supplemental Rule B explicitly states the Advisory Committee's conclusion, after considering such a change in Rule B, that the maritime attachment remedy should not be limited by the provisions of Rule 4(f). Courts in this district have since followed the drafters' intent and Professor Moore agrees with this result. See National Shipping and Trading Corp. v. Weeks Stevedoring Co., 252 F.Supp. 275 (S.D.N.Y.1966); East Asiatic Co. v. Indomar, Ltd., 422 F.Supp. 1335 (S.D.N.Y.1976); 7A Moore's Federal Practice ¶ B.06 (2d ed. 1978). Contra, Nea Armonia Shipping Co. v. Antco Shipping Co., 409 F.Supp. 967 (M.D.Fla.1976).

If this creates an artificial distinction between multi-district and single-district states or presents a possibility for abusive use of the maritime remedy, as in the case where an attachment is obtained unfairly in one district where a proper lawsuit could be commenced in another district without unfairness or inconvenience, see e. g., D/S A/S Flint v. Sabre Shipping Corp., 228 F.Supp. 384 (E.D.N.Y.1964), aff'd on other grounds sub nom. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50 (2d Cir. 1965), the courts may easily remedy the situation by exercising discretion to set aside an unfair attachment.

Here, the opposite situation is presented. There can be no doubt that plaintiffs' need for security is real, that their quest for attachment is not a tactic of harassment. A finding of jurisdictional presence based solely on defendants' prior activity, when used to justify the assertion of in personam jurisdiction is designed to prevent foreign defendants who have used the facilities of the state from escaping judicial reckoning by withdrawing beyond its borders. There is some anomaly in the use of this rule to defeat a claimant's opportunity to secure a more meaningful judgment. A finding of presence made in this fashion, where the defendants have ceased to do any business in New York and indeed have ceased operations altogether, gives the plaintiff little expectation that a judgment without security will be meaningful. If bending of the Rule is countenanced in the decision whether in fairness to sustain a maritime attachment, the present circumstances press decidedly in plaintiff's favor.

I conclude that the availability of service upon the Secretary of State outside the district does not defeat the attachment.

The defendants at oral argument sought also to rely on the provision of Federal Rule 4(i), which under circumstances permits service to be accomplished on foreign defendants by certified mail. They argue that this comports literally with the Admiralty Rule since the notice may be mailed within the district. The argument is not convincing. In the first place, Rule 4(i), by its express terms, applies only to defendants who are "not . . . found within

the state in which the district court is held." It is problematic to conclude at once that a defendant is not found within the state for Rule 4(i), but is found within the district for Admiralty Rule B. More significantly, this construction would destroy the attachment procedure where it is most needed—in cases brought against foreign defendants.

■ Defendants' final contention also fails, for simpler reasons. They contend that service may be made on their attorneys who are acting for them in various lawsuits being conducted in the district. By rendering such legal services, counsel does not become an agent for service of process. *See State v. Cortelle Corp.*, 73 Misc.2d 352, 341 N.Y.S.2d 640 (Sup.Ct.1972), *aff'd*, 43 App.Div.2d 668, 349 N.Y.S.2d 653, *modified on other grounds*, 38 N.Y.2d 83, 378 N.Y. S.2d 654, 341 N.E.2d 223 (1975).

■ Defendants further seek to defeat the attachments by the contention that Admiralty Rule B is not applicable because the container lease agreements upon which the action is based are not "maritime" in nature. Since the shipping containers are for use in overland, as well as overseas, transportation, they argue that the leases are not correctly classified as "maritime". I disagree.

> "In matters of contract, the principal determinant [of admiralty jurisdiction] is the relation which the cause of action bears to the ship, the great agent of maritime enterprise, and to the sea as a highway of commerce. A contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea . . . is subject to maritime law. . . .
>
> [Maritime character] does not attach to a contract merely because the services to be performed under the contract have reference to a ship, or to its business, . . . In order that such character should attach there must be a direct and proximate juridicial link between the contract and the operation of the ship, its navigation or its management afloat, . . . ."

1 Benedict on Admiralty § 183 (7th Ed. 1974).

Generally, contracts for the furnishing of services or supplies to a vessel are deemed maritime, provided that the services or supplies are directly or substantially related to the vessel's participation in maritime commerce. 7A Moore's *Federal Practice* ¶ .230[1] (2d ed. 1978).

The Starlines vessels were engaged in the ocean carriage of containerized cargo between the United States and various ports in the Persian Gulf and the Middle East. As part of its competitive services, Starlines was equipped to offer both container shipping services and to offer trucking services delivering the containers to their final inland destination.

The containers leased here were directly related to and integral to the operation of the ship's ocean freight carrying operation. As such, the contracts are maritime in nature even though Starlines might also have transported the containers overland. For analogous examples of contracts held to be maritime in nature *see Clubb Oil Tools, Inc. v. M/V George Vergottis*, 460 F.Supp. 835 (S.D.Tex.1978) (contract to lease oil pipe to a vessel owner to facilitate the loading of oil aboard the vessel); *Radiomarine Corp. v. Gulf Northern Co., Inc.*, 394 F.Supp. 881 (E.D.Missouri 1975) (contract to lease marine electronic equipment installed aboard vessel); *The Sam & Priscilla*, 1926 A.M.C. 67 (1st Cir. 1926) (contract to furnish a seine and accessories to a fishing schooner).

■ As to the pendency of suit in Louisiana, since the defendants have not appeared in that action, any recovery by the plaintiffs therein is *quasi in rem* in nature and limited to the value of the attached goods or credits. *See East Asiatic Co., Ltd. v. Indomar, Ltd. supra*, 1341–1342. Since the value of the property attached in Louisiana falls short of plaintiffs' claimed damages, that action does not bar commencement of the present action attaching property found within the Southern District.

Defendants' motion is denied.