**VTT VULCAN PETROLEUM, S.A., Plaintiff,**

v.

**LANGHAM–HILL PETROLEUM, INC., Defendant.**

**No. 88 Civ. 2577 (PKL).**

United States District Court, S.D. New York.

May 19, 1988.

Cardillo & Corbett, New York City (Tulio R. Prieto, Peter G. Drakos, R.V. Corbett, of counsel), for plaintiff.

Milgrim Thomajan & Lee P.C., New York City (Leo G. Kailas, Stanley McDermott, III, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

This maritime action was commenced, by filing of a summons and complaint, on April 12, 1988. That same day, this Court issued an Order for Issuance of Process of Maritime Attachment and Garnishment, and the Clerk issued a Writ of Process of Maritime Attachment. On May 6, 1988, defendant Langham–Hill Petroleum, Inc. ("Langham–Hill") moved to vacate the attachment. The Court heard oral argument on both May 12 and May 19, 1988.

Supplemental Admiralty Rule B provides, in relevant part, that:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district.

█ It is well established that a defendant is "found within the district," in the context of this maritime Rule, only if the defendant "can be found within the district in terms of jurisdiction" *and* "can be found for service of process." *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir.1963) (citations omitted). In other words, not only must the defendant be able to accept process [1], but the defendant must *also* "be engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *Id.* at 583 (citations omitted). This two-prong test for vacating a maritime attachment serves two purposes: "(1) to obtain jurisdiction of the [defendant] in personam through his property,[2] and (2) to assure satisfaction of any decree in [the plaintiff's] favor." *Id.* at 581–82 (citations omitted).

To the extent that maritime attachment is designed to assure satisfaction of any decree in a plaintiff's favor, I agree with Judge Leval that the two-prong test somewhat arbitrarily specifies the circumstances in which maritime attachment is proper. *See Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119, 122 (S.D.N.Y.1979). As Judge Leval observed, "[t]his test amounts to a

---

**1.** Although an agent for service of process might provide a basis for *in personam* jurisdiction in other contexts, the presence of an agent alone will not satisfy the two-prong test for vacating maritime attachment.

**2.** Although the defendant does not challenge, on due process grounds, the use of maritime attachment to obtain *in personam* jurisdiction, the Second Circuit has implied, in dictum, that the due process concerns, regarding quasi in rem jurisdiction, recognized in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683

(1977), do not apply to maritime attachment. *See Amoco Overseas Oil v. Compagnie Nationale Algerienne*, 605 F.2d 648, 654–55 (2d Cir.1979). Judge Sweet, relying in part on *Amoco Overseas Oil*, concluded that the holding in *Shaffer* does not apply to maritime attachment. *See Filia Compania Naviera, S.A. v. Petroship, S.A.*, No. 81 Civ. 7515 (RWS), slip. op. at 4–6 (S.D.N.Y. March 19, 1982). *See also Excel Shipping Corp. v. Seatrain International, S.A.*, 584 F.Supp. 734, 741 (E.D.N.Y.1984).

somewhat arbitrary compromise which assumes that the plaintiff will not require the protection of an attachment for security, nor should the defendant be subjected to it, if the defendant is present [both in the jurisdictional sense and to accept service of process], and assumes on the other hand that the plaintiff's interests are not adequately protected despite the ability to perfect *in personam* jurisdiction if the defendant is not present in both senses." *Id.* at 122. On the other hand, the two-prong test may represent the best way to avoid an otherwise overly burdensome case-by-case analysis of the actual need to provide a plaintiff with some security for judgment.

Applying the two-prong test for "presence" enunciated in *Seawind,* I hold that maritime attachment is proper in this case, because defendant Langham–Hill cannot be "found within this district."

■ As to one prong of the test—presence for "service of process"—Langham–Hill has shown that it could be served with process in the Southern District of New York when this action was commenced on April 12, 1988. The affidavit of Michael May, Langham–Hill's Chief Financial Officer, sworn to on May 3, 1988, states that although a Mississippi corporation with offices in Virginia, Langham–Hill was qualified on April 26, 1984, by the New York Secretary of State, to do business in New York, and Langham–Hill appointed as its agent for service of process CT Corporation Systems, 1633 Broadway, New York, New York. From 1984 through March 22, 1988, Langham–Hill had offices in the World Trade Center in New York City, from which it conducted commodity hedging operations in the state. Although Langham–Hill closed its New York office on March 22, 1988, the date of its last trade on the New York Mercantile Exchange, Langham–Hill remains qualified to do business in New York, and CT Corporation Systems is still its agent in the Southern District for service of process. Any inability of plaintiff to locate defendant's agent

appears to result only from a failure to make a *bona fide* effort to do so. *See Seawind,* 320 F.2d at 583.

■ Even if an agent was present on April 12, 1988, to accept service of process, the other prong of the test enunciated in *Seawind* requires Langham–Hill also to show that even in the absence of such an agent, Langham–Hill was engaged in sufficient activity in the district to subject it to jurisdiction—that is, that Langham–Hill was also present, at the time of suit, in the "jurisdictional" sense. Langham–Hill argues that it satisfies this prong of the test because of "the continuous and systematic course of business transacted by Langham–Hill in New York City prior to March 1988 incident to its petroleum trading operations on the New York Mercantile Exchange." Defendant's Memorandum in Support of Defendant's Motion to Vacate Rule B Writ of Attachment, at 2. In essence, Langham–Hill suggests that its past activity in New York, prior to the filing of this action, renders it "present" within the district for purposes of Rule B. In the circumstances of this case, however, such past presence will not suffice to satisfy the "jurisdiction" prong of the test.[3]

Defendant's position is based both on a misreading of *Seawind* and an improper construction of the purposes of Rule B. It is true that in *Seawind,* the Court of Appeals found the defendant was present in the "jurisdictional" sense even though the defendant's volume of activity in New York "possibly [did] not, by itself, qualify as 'doing business' under ordinary tests." *Seawind,* 320 F.2d at 583 (citations omitted). The Court of Appeals only found the defendant present in the "jurisdictional" sense, however, because a *contract,* which was *the subject of the lawsuit,* "was made and allegedly breached by [the defendant] in New York." *Id.*

Defendant's reliance on *Seawind* here is therefore misplaced. *Seawind* does not

---

**3.** Michael May's affidavit also indicates that even after March 22, 1988, Langham–Hill continued to own two seats on the New York Mercantile Exchange, although those seats have been inactive since April 15. However, Langham–Hill does not suggest that this limited activity constitutes "doing business" in New York on any continuous or systematic basis.

suggest that *past* "jurisdictional presence" is sufficient to defeat attachment. Rather, *Seawind* stands for the proposition that where a contract, which is the subject of a lawsuit, has been made and allegedly breached in the jurisdiction where attachment is sought, the contract itself can provide continued "jurisdictional presence" even after the defendant has physically terminated other contacts with the jurisdiction. In *Seawind,* the fact that the contract was made and allegedly breached in New York meant that the defendant "could clearly be made subject to suit in New York, even in the absence of a resident agent expressly authorized to accept process." 320 F.2d at 583 (citations omitted). Perhaps most significantly, in *Seawind,* the Court only considered whether the contract itself provided "jurisdictional" presence after the Court determined that the defendant was not doing business in New York "during 1962"—that is, at the time the suit was filed and the attachment was imposed.[4] *Id.*

Langham–Hill seeks to use a distinction between general and specific jurisdiction to justify its position. As the Supreme Court has explained, "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). On the other hand, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9.

Relying on the distinction between general and specific jurisdiction, Langham–Hill argues that while the contract in *Seawind* was the basis for *specific* jurisdiction, past *general* jurisdictional contacts—such as doing business in the forum on a "continuing and systematic" basis prior to the time of suit and attachment—would otherwise have been sufficient to justify vacating the attachment. As noted above, *Seawind* cannot be read to suggest that past contacts with the forum—apart from contacts which specifically relate to the subject matter of the litigation—can be used to show "jurisdictional presence" in the maritime attachment context. Past general jurisdictional contacts, unrelated to the subject matter of the litigation, provide no security to a plaintiff who wants to ensure that any judgment in its favor might be satisfied. Unlike specific jurisdictional contacts which do not terminate when a defendant physically leaves the forum state, general jurisdictional contacts do terminate when the defendant physically ends all continuous and systematic contact with the forum. Although past general jurisdictional contacts might satisfy due process concerns in other contexts, such past general jurisdictional contacts cannot satisfy the "jurisdictional presence" prong of the test for vacating a maritime attachment.

In the present case, there is no contract —nor any other subject of the litigation— which was made, performed, or breached in New York. Under these circumstances, Langham–Hill's contacts with New York prior to March 22, 1988, are insufficient to provide the showing of "jurisdiction presence" necessary to allow this Court to vacate the attachment here. *See Seawind,* 320 F.2d at 583.

---

**4.** Langham–Hill's reliance on *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., supra,* is also misplaced. Indeed, *Integrated Container* merely restates that "the *Seawind* case seems to imply that the presence which there resulted from the prior *contractual* contacts would have been sufficient to defeat the attachment, even absent continuing local activity or personnel." *Id.* at 123 (emphasis added). Because the defendants in *Integrated Container* had argued that "their presence ... is satisfied ... by the fact that the contracts were in question have such substantial connections with New York," *id.,* the Court concluded that "the defendants here appear to have narrowly satisfied [the "jurisdictional"] branch of the test, although their presence is predicated almost entirely on previous activity." *Id.* What Judge Leval referred to as "previous activity" was activity related to the contract that was the subject matter of the litigation.

## CONCLUSION

Defendant's motion to vacate the Rule B Writ of Attachment entered on April 12, 1988, is therefore denied.

SO ORDERED.