08-6131-cv
**STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Ltd.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————

August Term, 2008

(Argued: February 13, 2009                    Decided: March 19, 2009)

Docket No. 08-6131-cv

————

STX PANOCEAN (UK) CO., LTD.,

*Plaintiff-Appellant*,

–v.–

GLORY WEALTH SHIPPING PTE LTD. AND GLORY WEALTH SHIPPING SERVICES LTD. OF BVI,

*Defendants-Appellees*.

————

Before:

WALKER, CALABRESI, and WESLEY, *Circuit Judges*.

Motion seeking a stay pursuant to Federal Rule of Appellate Procedure 8(a), and appeal of the December 10, 2008 order of the United States District Court for the Southern District of New York (Daniels, J.), vacating the *ex parte* Process of Maritime Attachment and Garnishment obtained by Plaintiff-Appellant.

THE MOTION IS DENIED AND THE DISTRICT COURT ORDER IS AFFIRMED.

————

CHRISTOPHER CARLSEN, Clyde and Co. U.S. LLP, New York, NY, *for Plaintiff-Appellant*.

JAMES H. POWER, (Lisa D. Schaupp *on the brief*), Holland & Knight, LLP, New York, NY, *for Defendants-Appellees*.

————

PER CURIAM:

Plaintiff-Appellant STX Panocean (UK) Co., Ltd. ("STX") appeals from and seeks a stay, pursuant to Federal Rule of Appellate Procedure 8(a), of the December 10, 2008 order of the United States District Court for the Southern District of New York (Daniels, J.) vacating the *ex parte* Process of Maritime Attachment and Garnishment obtained by STX in the amount of $900,000 against Glory Wealth Shipping Pte Ltd. ("Glory Wealth") and Glory Wealth Shipping Service Ltd. ("Glory Service") (collectively, the "Defendants"). We find that registration with the New York Department of State, pursuant to New York Business Corporation Law § 1304, to conduct business in New York and designation of an agent within the district upon whom process may be served constitutes being "found" within the district for purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. We therefore affirm the district court's vacatur of the maritime attachment and dismiss the motion for a stay as moot.

## BACKGROUND

In November 2008, STX filed a complaint against Defendants, alleging that Glory Wealth agreed to charter one of its vessels, but then failed to produce the required hire payment for a fifteen-day period, and that Glory Service served as guarantor of Glory Wealth's performance. The district court issued an *ex parte* order pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims granting an attachment against Glory Wealth in the amount of $900,000. *See STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.*, No. 08-CV-9762 (GBD) (S.D.N.Y. Nov. 13, 2008) (*Ex Parte* Order).

The Defendants responded with a letter motion to vacate the attachment. The Defendants argued that they were not subject to a Rule B attachment because they had registered with the New York Department of State and therefore could be "found" in New York for Rule B purposes.

On December 10, 2008, the district court conducted a hearing to assess whether Glory Wealth in fact met Rule B's requirements. At the conclusion of the hearing, the district court vacated the attachment, finding that "[i]n the absence of a clear statement by the Second Circuit to the contrary," the court agreed with the sizable majority of Southern District judges who concluded "that the requirements [for a finding that the defendant is] found in this district are not a set of greater requirements than [those required to exercise] personal jurisdiction over the defendant[s] in this case." *Id.* (Hr'g Tr.) 27. The district court also noted that if STX won an arbitration award, it could return to the Southern District to satisfy that judgment against the Defendants. *Id.* at 28. STX-UK reiterated its request for a stay of the vacatur pending the outcome of the appeal before this court of *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 186 (S.D.N.Y. 2007), *appeal docketed*, No. 07-4193-cv (2d Cir. Sept. 18, 2007). The district court denied the application. *Id.* at 29-30. The district court explained that "the balance of hardships doesn't weigh towards a stay" where the attachment affected a significant amount of funds that were intended to flow to other parties. *STX Panocean*, No. 08-CV-9762 (Hr'g Tr.) 29-30. The district court added that "there's no reason to believe that, if appropriate, future funds can't be attached in further support of an arbitration award," particularly where it was unclear whether STX-UK had even filed for arbitration. *Id.* at 30. On December 16, 2008, STX filed a timely notice of appeal.

3

On December 18, 2008, STX filed a motion for a stay of execution of the order vacating the attachment. The applications judge granted a temporary stay pending this Court's hearing of that motion.

Because this is an issue of frequent occurrence in this circuit, *see, e.g.*, *Marimed Shipping, Inc. v. Persian Gulf Shipping Co.*, 567 F. Supp. 2d 524 (S.D.N.Y. 2008); *Pioneer Navigation Ltd. v. Stx Pan Ocean (U.K.) Co.*, 08 Civ. 10490 (JGK); *Minmetals Shipping & Forwarding Co. v. HBC Hamburg Bulk Carriers GmbH & Co.*, No. 08 Civ. 3533 (RWS), 2008 U.S. Dist. LEXIS 48639 (S.D.N.Y. Jun. 24, 2008); *Carolina Shipping, Ltd. v. Renaissance Ins. Group*, No. 08 Civ 4711 (BSJ), 2008 U.S. Dist. Lexis 104432 (S.D.N.Y. Jun. 10, 2008), *appeal docketed*, No. 08-3142-cv (2d Cir. Jun. 24, 2008); *Centauri*, 528 F. Supp. 2d at 186, and disposition of the motion requires analysis of the merits of the underlying appeal, we consolidated the motion and underlying appeal to resolve the merits of plaintiff's claim for an attachment. The parties were instructed to brief the substance of the appeal as well as the motion.

**DISCUSSION**

This Court, in its discretion, may issue a stay pending appeal under Rule 8(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A factor to be considered in granting a stay is whether the movant has demonstrated "a strong showing that he is likely to succeed on the merits." *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007). In our view, STX cannot demonstrate any likelihood of success on the merits.

Rule B provides, in relevant part: "If a defendant is not found within the district . . . a

4

verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Fed. R. Civ. P. Supp. R. B(1)(a). STX argues that defendant's registration pursuant to § 1304 alone is insufficient to avoid attachment in the Southern District of New York. However, for the following reasons, we find that registration under the statute is sufficient—defendants who have registered with the Department of State pursuant to § 1304 may be "found" within the district for purposes of Rule B analysis.[1]

Maritime attachments arose because it is often more difficult to obtain jurisdiction over parties to a maritime dispute than parties to a traditional civil action. Maritime parties are itinerant, their assets transitory. *See In re Louisville Underwriters*, 134 U.S. 488, 493 (1890). Thus, the traditional policy underlying maritime attachment has been to permit the attachment of assets wherever they can be found, thereby obviating the need for a plaintiff to "scour the globe" to find a proper forum for suit, or property of the defendant sufficient to satisfy a judgment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty* Ltd., 460 F.3d 434, 443 (2d Cir. 2006).

As such, an attachment under Admiralty Rule B serves two purposes. The attachment establishes jurisdiction over a portion of a defendant's property and thereby creates a fund from which a judgment may be satisfied. *See Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963). However, this Court has stated that "[t]he two purposes may not be separated . . . for security cannot be obtained except as an adjunct to obtaining jurisdiction." *Id.* at 582. Thus, Rule B gives potential defendants the choice between subjecting themselves to the

---

[1] We note that there has been some disagreement among district court judges as to the meaning of the term "district." However, this issue is not before us as the parties both agree that the district in question in this case is the Southern District of New York.

5

jurisdiction of the courts of the district in question, or making themselves vulnerable to the possibility that their property in the district will be attached. *See Daehan Shipping Co., Ltd. v. Farenco Shipping Co., Ltd.*, No. 08 Civ. 10052, 2008 WL 5068962, at *1 (S.D.N.Y. Nov. 24, 2008).

Although Rule B does not expressly define "found within the district," this Court has interpreted it to require "a two-pronged inquiry:  first, whether [Defendants] can be found within the district in terms of jurisdiction, and second, if so, whether [they] can be found for service of process." (the "*Seawind* Test").  *Seawind*, 320 F.2d at 582 (internal citations and quotation marks omitted); *see also Integrated Container Serv. Inc. v. Starlines Container Shipping Ltd.*, 476 F. Supp. 119, 122 (S.D.N.Y. 1979) (stating that "[a] maritime attachment is precluded under [Rule B] only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise in personam jurisdiction over the defendants," and the defendant "can be found within the geographical confines of the district for service of process.").   While the purpose of the prongs cannot be separated, they are distinct: the presence of an agent authorized to accept process is, alone, insufficient to establish that a defendant is "found" within that district. *See Seawind*, 320 F.2d at 583.  Similarly, sufficient contacts to establish in personam jurisdiction in the *International Shoe* sense, absent a showing of actual presence that would allow a plaintiff to locate the defendant in the district for service of process, will not support a conclusion that a defendant is found within that district. *Id.* at 583-84; *see also Integrated Container*, 476 F. Supp. at 122.

Federal law defines the requirements necessary for satisfaction of Rule B; however, federal courts look to the relevant state law to determine if those requirements are met.

6

Therefore, we look to New York law to determine whether the Defendants can be found within the Southern District. *See, e.g.*, *Seawind*, 320 F.2d at 583 (looking to state law governing service of process and personal jurisdiction to analyze whether the defendant was found within the Southern District).

It is undisputed that Defendants in this case satisfy the second prong of the *Seawind* Test, as both parties agree that Defendants have designated an in-state agent to receive service of process in the district at issue. *See STX Panocean*, No. 08 CV 9762, (Hr'g Tr.) 7. Therefore, we need only address the first prong of the test: whether Defendants are subject to personal jurisdiction in the district.

It is well-settled under New York law that registration under § 1304 subjects foreign companies to personal jurisdiction in New York. *See, e.g.*, *Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173 (3d Dep't 1983); *Robfogel Mill-Andrews Corp. v. Cupples Co., Mfrs.*, 67 Misc. 2d 623, 624 (N.Y. Sup. Ct., Monroe Cty. 1971). Federal courts have applied this doctrine as well. *See, e.g.*, *Iyalla v. TRT Holdings, Inc.*, No. 04 Civ. 8114 (NRB), 2005 WL 1765707, at *3 (S.D.N.Y. Jul. 25, 2005); *Cannon v. Newmar Corp.*, 210 F. Supp. 2d 461, 463 n.2 (S.D.N.Y. 2002); *see also Rockefeller Univ. v. Ligand Pharms.*, 581 F. Supp. 2d 461, 467 (S.D.N.Y. 2008) (holding that authorization to do business in New York and designation of a registered agent for service of process "amount to consent to personal jurisdiction in New York.").

Only one Southern District of New York case, *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers, GmbH & Co. KG*, 409 F. Supp. 2d 427 (S.D.N.Y. 2006), *overruled in part by Aqua Stoli*, 460 F.3d at 446, has found a foreign corporation's "mere filing for authorization to do business" in New York to be insufficient under Rule B, which the district court interpreted as

requiring more "systematic and continuous" contacts. In contrast, every subsequent Southern

District court to have considered the issue has held that registration with the Department of State

pursuant to New York Business Corporation Law § 1304, constitutes being "found" within the

district for purposes of Rule B. *See Marimed Shipping*, 567 F. Supp. 2d at 528 (citing cases).

*Erne* has been widely discussed, criticized, and rejected by the judges in the Southern District.

*See, e.g., id.*; *Centauri Shipping*, 528 F. Supp. 2d at 191-92.

Under this majority view, amenability to suit, rather than a party's economic and physical

activities in the district at issue, is the touchstone of the first prong of the *Seawind* Test. *See*

*Integrated Container*, 476 F. Supp. at 123; *Centauri Shipping*, 528 F. Supp. 2d at 191. Recently,

in *Aqua Stoli*, this Court declined to specifically discuss the "found" factor of the Rule B test,

stating that district courts have not "experienced any confusion in its application," and citing

*Integrated Container*, 476 F. Supp. at 123, in support of this contention. 460 F.3d at 445 n.4. In

*Integrated Container*, Judge Pierre N. Leval, then sitting on the district court, held that the

jurisdictional presence factor is satisfied either where the defendant's "activity in the district" or

its "contacts within the district . . . permit the court to exercise *in personam* jurisdiction over the

defendant." *Id.* at 122. Applying this standard, the court in *Integrated Container* found that the

defendant's registration as a foreign corporation with the New York Department of State, as well

as its contractual consent to suit in New York, were sufficient to establish the defendant's

presence within the district for purposes of Rule B. *Id.*

Moreover, the district courts' reasoning that registration with the State satisfies the

jurisdictional prong of the test for being "found" is persuasive in light of the underlying purpose

of maritime attachment. In the context of peripatetic defendants with transient assets, maritime

8

attachment is aimed at obviating a plaintiff's need to determine where the defendant is amenable to suit. *See In re Louisville Underwriters*, 134 U.S. at 493. However, no "scour[ing of] the globe"—and, therefore, no attachment—is necessary where the defendant has already voluntarily subjected itself to the district's jurisdiction by reason of its registration with the State. *See Amoco Overseas Oil*, 605 F.2d at 655.

"Maritime attachment is centuries old." *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 267 (2d Cir. 2003); *accord Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47 (2d Cir. 1996) ("[M]aritime attachment is a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844."); *see also Atkins v. Fibre Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303 (1873). It has long existed because of the highly international nature of maritime commerce and the transitory nature of maritime assets within a given jurisdiction. *See Aqua Stoli*, 460 F.3d at 443; *Aurora Maritime Co.*, 85 F.3d at 48; *Amoco Overseas Oil Co. v. Compangie Nationale Algerienne de Navigation*, 605 F.2d 648, 655 (2d Cir. 1979). But as the world changed, so too did the exact nature and necessity of maritime attachment. In 1966, when Supplemental Rule B was created, the Advisory Committee drew heavily upon Admiralty Rule 2. *See* Supp. R. B, Advisory Committee's Notes. By 1966, however, it was clear that the precise need for maritime attachment and nature of maritime commerce had changed a great deal over the previous several hundred years and was likely to continue to change. For that reason, neither Supplemental Rule B nor the Advisory Committee attempted to define what it means to be "found within the district." *See id.* Rather, the Advisory Committee stated that "[t]he subject seems one best left for the time being to development on a

9

case-by-case basis." *Id.* This, we believe, invited courts to define what it means to be "found" in a common law fashion. But common law development in time can yield firm rules. And that is precisely what we hold today.

In the modern era, although maritime commerce is still international and maritime assets are still transitory, companies that have both appointed an agent for service of process and registered in New York, consenting to jurisdiction, do not pose the same needs for maritime attachment. Indeed, in today's era of electronic banking, many of the assets that are attached in New York are not ships, but rather electronic wire transfers routed through banks. And in today's era, "[t]he frustrated creditor" is not "much like Evangeline, the poor Arcadian girl separated from her lover, . . . tragically left to roam the shores awaiting the debtor's next arrival." *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion*, 732 F.2d 1543, 1548 (11th Cir. 1984) (referencing Henry Wadsworth Longfellow, Evangeline, *A Tale of Acadie* (1843)). Rather, when that debtor is registered to do business in New York, there are generally any number of means to prosecute a civil claim and, upon receiving judgment, collect on that claim.

Thus, we hold that a defendant's registration under New York Business Corporation Law § 1304 is sufficient to satisfy both prongs of the *Seawind* Test and, therefore, a company registered with the Department of State is "found" for purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Applying this rule to the case at hand, we find that STX is present in the district both jurisdictionally, by virtue of its registration with the Department of State, and in terms of its ability to accept service of process, by virtue of its appointment of a designated agent for service

10

of process within the district. Both of these are accomplished through its registration with the Department of State pursuant to § 1304.[2]

Because STX is not entitled to maintain its attachment by virtue of the Defendants' being "found" within the district, it cannot demonstrate a likelihood of success on the merits for purposes of its motion, and, necessarily, it also loses the underlying appeal. We thus affirm the district court's vacatur of the maritime attachment and dismiss the motion as moot.

**CONCLUSION**

For the foregoing reasons, the district court's order of December 10, 2008 vacating the *ex parte* Process of Maritime Attachment and Garnishment is hereby AFFIRMED. The motion for a stay of that order pursuant to Federal Rule of Appellate Procedure 8(a) is DISMISSED AS MOOT.

---

[2] STX itself conceded that Defendants' registration with the State subjects them to personal jurisdiction. When asked "Is there any way they can argue they can't be sued and a judgment enforced against them in this jurisdiction," by Judge Daniels, counsel for STX-UK answered, "I don't believe so . . ." Previously, counsel for STX had stated that "[Defendants are] subject to personal jurisdiction by virtue of their registration."

11