**FRONTIER ACCEPTANCE CORPORA-TION, Limited, Plaintiff,**

v.

**UNITED FREIGHT FORWARDING CO., Limited, Defendant,**
and
**Keen Kraft Marina Company, Intervening-defendant.**

**Civ. No. 63-67.**

United States District Court
D. New Jersey.

July 2, 1968.

Archer, Greiner, Hunter & Read, Camden, N. J., by David F. Norcross, Camden, N. J., for plaintiff.

Feuerstein & Sachs, Newark, N. J., by Marvin A. Sachs, Newark, N. J., for defendant.

Lum, Biunno & Tompkins, Newark, N. J., by Charles H. Hoens, Jr., Newark, N. J., for intervening-defendant.

## OPINION and ORDER

COHEN, District Judge:

This is an *in personam* suit in Admiralty, under Rule 9(h), F.R.Civ.P.,

28 U.S.C.[1], based upon defaulted notes and security instruments arising out of the sale and purchase of a seagoing vessel. Process was effected by the issuance of a foreign attachment out of this Court, pursuant to Supplemental Rule B, F.R.Civ.P., 28 U.S.C., against the vessel.[2]

Presently calling for resolution is a motion, submitted on deposition, affidavits and briefs and referred to the writer for disposition. This motion was made by the plaintiff, Frontier Acceptance Corporation, Limited (Frontier) of Ontario, Canada, to strike paragraphs 3, 4, 5, 6 and 8 of the answer of the intervening defendant, Keen Kraft Marina Company (Keen Kraft), likewise of Ontario, Canada, as being surplus, redundant, immaterial and impertinent. Frontier also moves to strike Keen Kraft's counterclaim asserted against it, for the same reasons. Keen Kraft's cross claim against the principal defendant, United Freight Forwarding Co., Limited (United), also an Ontario, Canada corporation, is not reached by Frontier's motion, nor has it been answered or otherwise opposed by United. Since it is an integral issue among the parties, in the interest of expediency, it will receive similar consideration and disposition.

In the principal action, filed January 18, 1967, Frontier sued United for default upon two promissory notes in the amounts of $15,000.00 and $3,600.00 (Canadian money) respectively. The first note, dated December 22, 1965, was delivered for the purchase by United from Frontier of the Cabin Cruiser "Laval IV," which note was secured by a chattel mortgage of even date upon said cruiser and her contents. After acquiring possession of the cruiser, United borrowed a further $3,600.00 (Canadian money) for repairs on July 5, 1966 from Frontier and executed another note and an additional chattel mortgage on the vessel.

On March 2, 1967, United filed a claim as owner of the attached vessel but in doing so, did not strictly comply with the requirements of Supplemental Rule C(6).[3] It does, however, clearly demonstrate that United had actual notice of Frontier's suit by foreign attachment. Nevertheless, it neither answered nor otherwise defended this suit.

On April 7, 1967, Keen Kraft was permitted by order of the Court to inter-

---

1. "Rule 9(h) Admiralty and Maritime Claims. A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 26(a), 38(e), 73(h) 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty it is an admiralty or maritime claim for those purposes whether so identified or not. * * *" This rule was promulgated as part of the 1966 unification of the civil and admiralty practices under a single form of action, while preserving certain features peculiar to practice in admiralty which were not intended to be abrogated by the merger, hence the Supplemental Rules for Admiralty and Maritime Claims. 2A Moore's Fed.Pract. ¶ 9.09, p. 1985.

2. "Rule B. Attachment and Garnishment: Special Provisions (1) When Available; Complaint, Affidavit and Process. With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. * * *" 7A Moore's Fed.Pract. ¶ B.01.

3. This claim was neither under oath, or affirmation by the owner, nor was the attorney's authority to make such claim stated. See Rule C(6) note 4 infra.

vene as the claimant of a maritime lien in the amount of $23,314.07 for overhaul, service and repair of and to the cruiser; on April 19, 1967, Keen Kraft filed an answer and counterclaim to Frontier's complaint and a cross claim against United for a like amount.

United, having failed to answer, Frontier requested entry of its default on June 1, 1967. Judgment by default was granted on July 7, 1967, and entered of record on September 14, 1967.

The challenged answer of Keen Kraft admits, in substance, the sale by Frontier and the purchase by United of the cruiser and the execution of the notes and securities. However, Keen Kraft denies that United is in default on its obligations as alleged and contends that no indebtedness could accrue, or has accrued, under the instruments between United and Frontier because Frontier as seller failed to make proper registry of Canadian documentation of the cruiser in the name of United.

■ On this motion, Frontier argues that portions of Keen Kraft's answer should be stricken because it asserts matters of defense which might have been raised by United had it seen fit to answer the complaint, but which cannot be interposed by Keen Kraft. With this proposition the Court agrees. In the strict sense, Keen Kraft was a stranger to the financing arrangements between the principal parties, Frontier and United; it was not a party thereto. Therefore, it has no legal standing or status to advance such defenses on behalf of United. Its attempt to do so is under-

standable in light of its interlocking relationship with United, discussed infra. Accordingly, Frontier's motion to strike paragraphs 3, 4, 5, 6 and 8 of Keen Kraft's answer will be granted. Since, other than the usual pedestrian admissions and denials, these paragraphs constitute the substance of the answer, the entire answer will be stricken.

In Keen Kraft's counterclaim against Frontier, it alleges that it rendered service and made repairs to and upon the cruiser for United amounting to $23,-314.07. It demands judgment in that amount, a *lien* in its favor against the cruiser and, further, a declaration that such *lien* has priority over any claim asserted by Frontier.

■ As an intervening defendant, Keen Kraft clearly misconceives its remedies. In the primary suit *in personam*, Frontier sought judgment against United, which it subsequently obtained by default. Prior to entry of such default, Keen Kraft was permitted to intervene as a defendant in that suit because it asserted a claim against United and the vessel. However, by its pleadings, it attempted to interpose its claim against United and the vessel through a counterclaim against Frontier, who had asserted no claim whatsoever against Keen Kraft. While Keen Kraft's pleading is denominated "counterclaim," it utterly fails to state any legal basis for relief, or even make a demand therefor, from the principal plaintiff, Frontier. Further, it seeks to establish a maritime lien against the cruiser but, as mandated by the Special Provisions of Supplemental Rule C, F.R.Civ.P., 28 U.S.C.[4],

---

4. "Rule C. Actions In Rem: Special Provisions
　(1) When Available. An action in rem may be brought:
　　(a) To enforce any maritime lien;
　　(b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.
　Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

　　*　　*　　*　　*　　*
　(2) Complaint. In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action.
　　*　　*　　*　　*　　*
　(3) Process. Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or

such remedy against a vessel must be sought in an *in rem* proceeding. The principal action was *in personam* under Supplemental Rule B, supra. The vessel was used as a device under foreign attachment to compel the owner to respond to Frontier's suit and not to answer in its own character to admiralty *in rem* claims of others. Asiatic Petroleum Corp. v. Italia S. A. Di Navigazione, 119 F.2d 610, (3 Cir. 1941); 1941 A.M.C. 689. Thus, failing to state a claim against Frontier in its suit upon which relief can be granted under either Supplemental Rule B or C, supra, Keen Kraft's counterclaim will be stricken.

■■■ Turning next to Keen Kraft's cross claim against United, it asserts the same claim of $23,314.07 for servicing and repair of the vessel allegedly made at the request and on behalf of United and demands judgment against it. It seeks as well a declaration of a maritime lien against the vessel and a sale of the vessel to satisfy such lien. Keen Kraft sought to serve notice of its cross claim upon United by mail but it did not issue any process against the vessel, nor verify its claim as required by Supplemental Rule C, note 4, supra. Its cross claim, therefore, is fatally defective because of its failure to effect proper service of process upon United, a non resident defendant. The foreign attachment process issued by the plaintiff in the principal action is confined to the securing of jurisdiction of the principal defendant, United, through its asset, the cruiser within this jurisdiction. The purpose of a writ of foreign attachment in Admiral-

ty is twofold: (1) to obtain jurisdiction of a named respondent *in personam* through his property *and only to the extent of his property,* and (2) to obtain such property as security in the event that the suit against its owner is successful. Swift & Co. Packers v. Compania Colombiana del Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206, 19 A.L.R.2d 630 (1950); 2 Benedict on Admiralty (Knouth ed. 1940) §§ 288–291. Frontier's attachment subjected United, through its asset, to Frontier's suit *in personam.* The traditional use of foreign attachment process, in an *in personam* suit in maritime cases[5], has been preserved under the 1966 Supplemental Rules of our Federal Practice. 7A Moore's Fed.Prac., ¶ .90. At page 493 thereof, Professor Moore states:

"By preserving maritime attachment and garnishment, a claimant is enabled to obtain jurisdiction over credits and effects (property) of the defendant in any number of places where these may be attached or garnished, although the defendant's residence or place of business may be half way around the world and the occurrence underlying the suit took place in some other district, on the high seas, or in a foreign country. The practical importance to plaintiffs in preserving this remedy, which antedates the formulation of a comparable common law remedy is readily apparent." (Parentheses in text.)

Ships are considered "effects" within the admiralty practice governing attachment and garnishment. The Alpena, 7 F. 361 (D.C.E.D.Mich.1881); 2 Am.Jur.

---

other property that is the subject of the action and deliver it to the marshal for service.

(4) Notice. * * * * * * * *

(5) Ancillary Process. * * * * *

(6) Claim and Answer; Interrogatories. The claimant of property that is the subject of an action in rem shall file his claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in

the property by virtue of which the claimant demands its restitution and the right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that he is duly authorized to make the claim.

  *    *    *    *    * "

7A Moore's Fed.Pract. ¶ C.01

5. See: Smith v. Miln, Abb.Adm. 373, Fed. Cas.No.13081 (S.D.N.Y.1848); San Rafael Compania Naviera, S. A. v. American Smelting & Refining Co., 327 F. 2d 581 (9 Cir. 1964).

2 § 156; former Admiralty Rule 2, now Supplemental Rule B, 1966 unification. Thus, the form of complaint is new under the Supplemental Rules but the substance and distinctions of admiralty practice are preserved.

■ In response to Frontier's foreign attachment, United could have entered an appearance, filed substituted security for the attached vessel, or filed an answer to the complaint, whereupon the suit *in personam* would have proceeded. United did not elect to do so. It did, however, file a claim as owner, demonstrating that it had actual notice of Frontier's suit. So that United's property, the cruiser, was before the Court only for United's response to Frontier and not to Keen Kraft. Accordingly, an *in personam* suit in Admiralty by Frontier's foreign attachment to compel the response of United, as owner of the vessel, cannot be converted into an *in rem* proceeding against the vessel by Keen Kraft. Asiatic Petroleum Corp. v. Italia S. A. Di Navigazione, supra. In order for Keen Kraft to reach the cruiser, its own *in rem* proceeding and process are required. Its effort to counter Frontier's *in personam* proceeding is ingenious, but futile. Its attempt by cross claim to sue United *in personam* requires *in personam* jurisdiction. None was secured by Keen Kraft.

It cannot hinge its asserted *in personam* cross claim against United upon Frontier's foreign attachment process. Its attempted service upon United as a nonresident defendant might have been appropriate in its own foreign attachment, or in its own *in rem* proceeding, neither of which it instituted. If Keen Kraft desires to sue either United or the vessel or both, as the admiralty practice

permits, it should do so. The historical practice in maritime cases is adversary [6]; its design both in concept and practice contemplates custody of property attached upon the initiative of a claimant to whom it must respond.

The thrust of Keen Kraft's claim is both against the vessel and its owner, United. However, neither is before the Court to answer to Keen Kraft. If it seeks relief against the owner, then it could secure *in personam* jurisdiction under Supplemental Rule B, supra. If it seeks a lien against the vessel, it must proceed *in rem* under Supplemental Rule C, supra, to bottom the vessel here as a party to *its* action and to tie *its* asserted lien thereto. This, in both regards, it has failed to do.[7] While its cross claim may be academically within the newly unified Admiralty Practice under the Federal Rules of Civil Procedure[8], it lacks compliance with the Special Provisions of Rules C(1) and (2), supra, requiring that a complaint *in rem*, albeit denominated as a cross claim, shall be verified upon oath or solemn affirmation. Moreover, an *in rem* action against a vessel requires its personification by being named a party. None of these essential requirements were met. Therefore, Keen Kraft's cross claim will be dismissed, *sua sponte,* for lack of jurisdiction over the person and the subject matter.

In conclusion, it should be observed that this Court is not unmindful of the liberality with which the peculiar rights of maritime materialmen are regarded and protected. However, in the instant case, an examination of the uncontradicted deposition reveals that this is not a case where a materialman is dealing with a vessel or its owner at arms length.

6. "Proceedings in rem, which in effect made the 'offending res' the defendant, are derived from the ancient maritime codes promulgated in the coastal towns of the eastern Mediterranean before the rise of the Roman Empire and, like maritime attachment and garnishment, were part of the general maritime law adopted by the United States." 7A Moore's Fed. Pract. ¶ .90 p. 494.

7. See: Gilmore & Black, The Law of Admiralty (1957) ch. IX; 1 Norris, The Law of Seamen (2d 1962) ch. 20.

8. F.R.Civ.P., Rule A, scope of rules; Supplemental Rules Special Provisions, B. & C., 28 U.S.C.

Here, James McKean, the president and sole owner of Keen Kraft, is also the secretary-treasurer and one half owner of United. David Carnie, Jr., is the other half owner and president. United was created as a corporation ostensibly for the sole purpose of purchasing the cruiser in question from Frontier. It was McKean and Carnie who both executed the purchase and repair notes and chattel mortgages on the cruiser, acting for United, and who, also, endorsed the notes as personal guarantors. Furthermore, it was they, again acting on behalf of United, who contracted with Keen Kraft, owned solely by McKean, for the servicing and repairs allegedly made to the cruiser. And it was McKean who, after United's default on its notes to Frontier, and after United's failure to pay for wharfage, servicing and repairs at Keen Kraft's marina at Frenchman's Bay, Ontario, Canada, personally "skippered" the cruiser within the territorial jurisdiction of this Court. In practical effect, McKean's corporation, Keen Kraft, takes the position that it should be paid for repairs made and services rendered to a vessel owned jointly by it and United; it ignores United's default in the purchase obligations, and it seeks to impress a maritime lien with a priority which would defeat Frontier's claim for payment of notes representing the purchase price of and the repairs to the vessel.

Certainly, these circumstances are not such as usually attend a materialman's maritime claim invoking the broad equity of an admiralty court. See: Swift & Co. Packers, supra, 339 U.S. pp. 690–697, 70 S.Ct. 861. As stated at page 695, 70 S.Ct. at page 868 "But because power exists, its use is not inexorable."

### ORDER

It is, therefore, on this 2nd day of July, 1968 ORDERED and ADJUDGED, that the answer and counterclaim filed on behalf of the intervening defendant, Keen Kraft Marina Company, against plaintiff, Frontier Acceptance Corporation, Limited, be and the same are stricken and dismissed hereby; and

It is further ORDERED and AD-JUDGED that the cross claim, filed on behalf of the intervening defendant, Keen Kraft Marina Company, against defendant, United Freight Forwarding Co., Limited, be and the same is dismissed hereby; and

It is further ORDERED and AD-JUDGED that the maritime lien claimed by the intervening defendant, Keen Kraft Marina Company, against the vessel, Cabin Cruiser Laval IV, be and the same is denied hereby.