**WESTERN BULK CARRIERS (AUSTRALIA), PTY. LTD., Plaintiff,**

v.

**P.S. INTERNATIONAL, LTD., Defendant.**

No. C-2-91-262.

United States District Court, S.D. Ohio, E.D.

April 22, 1991.

---

Timothy Alan Riedel, Arter & Hadden, Columbus, Ohio, Henry Billingsley, Arter & Hadden, Cleveland, Ohio, for plaintiff.

Kenneth Michael Richards, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is presently before the Court on defendant's motion to vacate a maritime attachment.

### STATEMENT OF FACTS

According to its verified complaint, plaintiff Western Bulk Carriers (Australia) Pty. Ltd. (hereinafter "Western Bulk") is an

Australian corporation engaged in the business of operating, chartering and subchartering and trading with ocean going vessels in international commerce. Defendant P.S. International Inc. (hereinafter "P.S. Int'l") is an Indiana corporation dealing in agricultural products and in contracting for maritime transportation of such commodities. In May 1990 Western Bulk as owner and operator of the Motor Vessel MORLAND entered into an agreement of time charter with Meridian Ship Agency, Inc. (hereinafter "Meridian") under which Western Bulk chartered to Meridian the vessel for a time chartered trip with cargo of steel and meals. The vessel was to be placed at Meridian's disposal at New Orleans, Louisiana and redelivered to Western Bulk at Indonesia, with a time charter hire to be paid by Meridian at a rate of $10,650.00 per day. The charter agreement also provided that Western Bulk would "have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter."

Meridian entered into a subcharter agreement with defendant P.S. Int'l under which they agreed that P.S. Int'l "would voyage charter the M/V MORLAND for a part cargo of 15,000 metric tons ten percent more or less at Meridian's option of soya bean meal in bulk, with the M/V MORLAND to transport same from one safe berth, one safe port Mississippi River, Louisiana, to one safe berth, one safe port Manila, Philippines." P.S. Int'l agreed to pay to Meridian the cost of loading, spout trimming and discharging the vessel, including demurrage, if incurred, at the rate of $10,650 per day for each day, or pro rata for part of a day, for all time used in loading or discharging in excess of the allowed time.

The M/V MORLAND entered into the service of Meridian at 0001 hours on May 11, 1990, and 16,499.873 metric tons of bulk soybean meal were laden on board for shipment by defendant to the Philippines. Meridian prepaid the time charter through June 25, 1990, paying $449,296.86, but failed to make any further payments. In August 1990 Meridian filed a petition in bankruptcy, and plaintiff claims that $1,304,029.21 is due and owing from Meridian to plaintiff under the time charter. Meanwhile, the M/V MORLAND reached the Philippines, and on or about July 20, 1990, while the soybean meal was being discharged at Manila by defendant, plaintiff sent by telex a formal notice of the exercise of its maritime lien on the subfreights, including demurrage earned or to be earned. Pursuant to the notice, defendant became obligated to withhold from Meridian and pay only to plaintiff any demurrage which might become due. The total part cargo was discharged from the M/V MORLAND on 1530 hours on September 27, 1990. The demurrage earned amounted to 58 days 1 hour 35 minutes, at $10,650.00 per day or $618,402.60, less 1.25% commissions of $7,730.03, producing a total demurrage allegedly due from defendant to plaintiff of $610,672.57. Defendant has failed to pay this amount to plaintiff.

Plaintiff commenced this action on April 2, 1991. Plaintiff initiated this action by way of maritime attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, which provides in pertinent part:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or the plaintiff's attorney that, to the affiant's knowledge, or to the best of the affiant's information and belief, the defendant cannot be found within the district. The verified complaint and affidavit shall be reviewed by the court and, if the conditions set forth in this rule appear to exist, an order so stating and authorizing process of attachment and garnishment shall issue.

In the verified complaint plaintiff alleged that defendant cannot be found within this district but that defendant has goods and

chattels, or credits and effects within this district, specifically an account at BancOhio National Bank, against which plaintiff is entitled to a writ of maritime attachment and garnishment. In support plaintiff presented the affidavit of attorney Henry E. Billingsley, II, in which Mr. Billingsley details his efforts to find defendant within this district and states his belief, based on such efforts, that defendant cannot be found within this district. On April 3, 1991 the Court ordered the issuance of process of maritime attachment and garnishment, and such process was immediately served upon an agent of BancOhio. According to the present state of the record, BancOhio was served with process of maritime garnishment and attachment at 9:14 a.m. and 10:00 a.m. on April 3, 1991, at 1:20 p.m. and 1:51 p.m. on April 4, 1991, and at 1:05 p.m. and 1:25 p.m. on April 5, 1991.[1]

On April 5, 1991, defendant filed a motion to vacate attachment order and consent to jurisdiction. Defendant contends that the attachment of its funds at Banc-Ohio has caused extreme hardship threatening its continued viability as a business. Defendant argues that there exists no basis for the attachment order because defendant can be found within this district, consents to this Court's jurisdiction, and has an authorized agent within this district for acceptance of service of process. Accordingly, defendant requests that the attachment order be vacated, or alternatively, that no further attachments be forthcoming under the terms of the order. Counsel for the parties appeared for a conference before Magistrate Judge Terence P. Kemp on April 5, 1991, at which plaintiff was directed to file a memorandum contra defendant's motion by the close of business on Monday, April 8, 1991. Plaintiff filed its memorandum contra on April 8, 1991 and an amended memorandum contra on April 9, 1991, and defendant filed a reply memorandum on April 15, 1991. On April 17, 1991 the Court granted plaintiff's request for leave to file a response to defendant's reply memorandum, and plaintiff

was given until April 19, 1991 to file a response. Plaintiff did file a responsive memorandum on April 19, 1991. On the same date, April 19, 1991, defendant filed a supplemental memorandum in which defendant brings to the Court's attention the fact that it has now made application to register as a foreign corporation doing business in the State of Ohio. Accordingly, defendant's motion to vacate is now before the Court for decision.

## DISCUSSION

"Quasi in rem proceedings are begun by attachment or other seizure of the property when the court has no jurisdiction over the person of the defendant, but has jurisdiction over a thing belonging to him or over a person who is indebted to, or owes a duty to the defendant." *Stevedoring Serv. of America v. Ancora Transp., N.V.*, 884 F.2d 1250, 1252 (9th Cir.1989). *See also Belcher Company of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163–64 (5th Cir.1984).

> The process of foreign attachment is known of old in admiralty. It has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful.... While the process may be utilized only when a respondent is not found within the jurisdiction, an attachment is not dissolved by the subsequent appearance of respondent.

*Swift & Co. Packers v. Compania Columbiana Del Caribe*, 339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950) (citations omitted). *See also Pride Shipping Corp. v. Tafu Lumber Co.*, 898 F.2d 1404, 1407 (9th Cir.1990); 7A Moore's Federal Practice ¶ B.08 (2d ed.1988). "Processes in rem and of maritime attachment represent an exception to the general rule that in the absence of statutory authorization a plaintiff may not have security for his claim until it is established and reduced to judgment." *Thyssen Steel Corp. v. Federal Commerce & Navigation Co.*, 274

---

**1.** Additional attachment may have occurred since April 5, 1991 but evidence of such attachments is not presently in the record.

F.Supp. 18, 21 (S.D.N.Y.1967). Consistent with *Swift & Co. Packers*, courts have repeatedly recognized that maritime attachment serves both to obtain jurisdiction over the defendant in personam through his property and to assure satisfaction of any judgment in favor of the party bringing the action. *See Stevedoring Serv. of America*, 884 F.2d at 1252; *Trans–Asiatic Oil Ltd. v. Apex Oil Co.*, 743 F.2d 956, 960 (1st Cir.1984); *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581–82 (2d Cir.1963); *Jackson v. Inland Oil & Transp. Co.*, 318 F.2d 802, 806 (5th Cir. 1963).[2] These two purposes are necessarily interrelated, "for security cannot be obtained except as an adjunct to obtaining jurisdiction." *Seawind Compania, S.A.*, 320 F.2d at 582. *See also Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.*, 494 F.Supp. 183, 185 (D.Conn.1980); *East Asiatic Co., Ltd. v. Indomar, Ltd.*, 422 F.Supp. 1335, 1338 (S.D.N.Y.1976). However, courts have also held that the spirit of Rule B "is not violated when a party's primary interest in seeking the attachment is obtaining security to satisfy a judgment, rather than simply obtaining *in personam* jurisdiction." *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F.Supp. 189, 191 (S.D.N.Y.1987). *See also Furness Withy (Chartering) Inc., Panama v. World Energy Sys. Assocs., Inc.*, 523 F.Supp. 510 (N.D.Ga.1981); *Norfolk Shipbuilding & Drydock Corp. v. The Motor Yacht LaBelle Simone*, 371 F.Supp. 985 (D.P.R.1973).

. To secure a writ of maritime attachment pursuant to Rule B, a plaintiff must satisfy four prerequisites: (1) the plaintiff has an in personam claim against the defendant which is cognizable in admiralty; (2) the defendant "cannot be found within the district" in which the action is commenced; (3) property belonging to the defendant is present or will soon be present in the district; and (4) there is no statutory or general maritime law proscription to the attachment. 7A Moore's Federal Practice ¶ B.03 (2d ed.1988). *See generally* Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 J.Mar.L. & Com. 521, 526–30 (1989). "Federal law generally governs questions as to the validity of Rule B attachments." *Reibor Int'l Ltd. v. Cargo Carriers (KACZ–CO.) Ltd.*, 759 F.2d 262, 265 (2d Cir.1985). Defendant first questions whether property belonging to the defendant is present in the district. Defendant contends that its bank account at BancOhio is "part of an overall fully secured credit line arrangement" between the bank and defendant, and that BancOhio has a perfected security interest (perfected under Ohio law) in all funds in defendant's account which is prior to and superior to plaintiff's lien effected by the attachment order. However, the issue at this point is not whether it is plaintiff or BancOhio which has the superior secured interest in the funds in defendant's bank account and will ultimately be entitled to those funds in satisfaction of its claim.[3] Rather, the issue

**2.** *See also Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119, 122 (S.D.N.Y.1979); *Nea Armonia Shipping Co., Ltd. v. Antco Shipping Co., Ltd.*, 409 F.Supp. 967, 969 (M.D.Fla.1976); *Frontier Acceptance Corp. v. United Freight Forwarding Co.*, 286 F.Supp. 367, 371 (D.N.J.1968); *Marine Transp. Lines, Inc. v. Nunes*, 211 F.Supp. 156, 157 (N.D. Cal.1962).

**3.** Under Rule B(3)(a), "[t]he garnishee shall serve an answer, together with answers to any interrogatories served with the complaint, within 20 days after service of process upon the garnishee." In this case, twenty days have not yet passed since the date of service of process upon BancOhio (April 3, 1991), and BancOhio has not filed an answer.

"The garnishee ... should be permitted to raise, by motion or in his Answer, any of those defenses permitted by the Federal Rules which are available to him and not personal to the defendant...." 7A Moore's Federal Practice ¶ B.11, at B–501 (2d ed. 1988). The treatise further explains:

The garnishee, while compelled to answer those portions of the Complaint directed toward it, may set off against any of the defendant's assets in its possession claims it has against the defendant. And, it makes no difference that the garnishee's claims arise out of a non-maritime transaction. Before set off is available, however, it would appear to be necessary that the debt of the defendant to the garnishee has matured or that the garnishee be specifically holding the property of the defendant as security for an unmatured debt as provided by a loan agreement.

*Id.* at B–504 (citing *Wilhelmsens Dampskibaktiesselskab v. Canadian Venezuelan Ore Co.*, 224

is whether the funds in the bank account, held by BancOhio and subject to Banc-Ohio's security interest, are "goods and chattels, or credits and effects" of defendant for purposes of Rule B. In the Court's view, the funds in the BancOhio account clearly are the property of defendant and are subject to attachment pursuant to Rule B.

■ There is no dispute that "the nature of the Rule B(1) writ is such that it must either attach property on the date of service or be void." *Union Planters Nat'l Bank v. World Energy Systems Assocs.,* 816 F.2d 1092, 1098 (6th Cir.1987) (citing *Reibor Int'l Ltd.,* 759 F.2d at 266). Furthermore, a writ of attachment and garnishment is of no legal effect where no goods, chattels, credits, or effects of the defendant are in the hands of the garnishee. *See Nea Armonia Shipping Co.,* 409 F.Supp. at 969. However, the Court finds nothing in Rule B, or in the *Union Planters* case cited by defendant, which would per se prevent an attachment of property simply because the property is subject to an arguably superior secured interest. Indeed, cases have upheld the validity of an attachment even where the property is in the custody of the United States Marshal under an earlier writ of attachment. *See, e.g., Olaf Pedersen's Rederi, A/S of Oslo v. Philippine Merchants Steamship Co.,* 238 F.Supp. 885 (D.Haw. 1965). Furthermore, defendant has cited to no Ohio law which generally would preclude attachment of property already subject to a perfected security interest, and even if such state law existed, there is some question whether maritime attachment under Rule B could be so precluded. *See Tonder v. M/V The "Burkholder",* 630 F.Supp. 691, 694 (D.V.I.1986) (Virgin Islands' statute exempting property of College of the Virgin Islands from judicial process, including attachment, would not preclude attachment of such property under admiralty law). For these reasons, the Court finds that the funds in defendant's account at BancOhio are "goods and chat-

tels, or credits and effects" subject to attachment proceedings under Rule B.

■ Defendant's primary argument is essentially that the attachment in this case should be vacated because defendant can be found within this district, has consented to the jurisdiction of this Court, and has appointed an agent for receipt of service of process in this district. However, "[t]he right to the attachment is not defeated by the filing of a general appearance." *Construction Exporting Enters. v. Nikki Maritime Ltd.,* 558 F.Supp. 1372, 1375 (S.D.N.Y.1983). Defendant's voluntary appearance after attachment, submission to the exercise of personal jurisdiction by this Court, and designation of an agent within this district for receipt of service of process, also after attachment, are not alone sufficient to warrant vacation of the attachment. *Compare Nehring v. Steamship M/V Point Vail,* 901 F.2d 1044, 1052 (11th Cir.1990) (*after* defendant enters a general appearance "maritime attachment—which exists primarily to secure such appearance—could no longer properly issue"). "If it were the case that jurisdiction alone was the sole goal, then an appearance would seem to be sufficient to cause a dissolution of the attachment. That is precisely the point of view that the Supreme Court rejected." *Pride Shipping Corp.,* 898 F.2d at 1407. The court in *Pride Shipping Corp.* went on to explain:

> [I]f quasi in rem jurisdiction is first acquired over a defendant, we fail to see any particular reason why that jurisdictional base should disappear simply because another ground of jurisdiction has also become available. There is nothing incompatible between those concepts. There are very good reasons for maintaining quasi in rem jurisdiction over a defendant who, absent the attachment, could not be brought before the court in the first place.

*Id.* at 1408.

■ "To defeat a writ of attachment it is necessary for the defendant to show that it

F. 881, 885–86 (2d Cir.1915); *San Rafael Compania Naviera, S.A. v. American Smelting & Refining Co.,* 327 F.2d 581 (9th Cir.1964)). *See*

*also Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.,* 306 F.2d 188, 194 (9th Cir. 1962).

can be 'found' within the district." *Metal Transp. Corp. v. Canadian Transp. Co.,* 526 F.Supp. 234, 235 (S.D.N.Y.1981). The clause "found within the district" is not defined in Rule B, as the Advisory Committee found the subject "best left for the time being to development on a case-by-case basis." Rule B advisory committee's note. However, courts have traditionally engaged in a two-pronged inquiry: "first, whether the defendant has engaged in sufficient activity within the district to permit the Court to exercise in personam jurisdiction over the defendant, and second, if so, whether it can be found within the geographical confines of the district for the service of process." *Metal Transp. Corp.,* 526 F.Supp. at 235. *See also LaBanca v. Ostermunchner,* 664 F.2d 65, 67 (5th Cir. Unit B Dec. 1981); *State of Oregon ex rel. State Highway Comm'n v. Tug GO GETTER,* 398 F.2d 873, 874 (9th Cir.1968); *Chilean Line Inc. v. United States,* 344 F.2d 757, 760 (2d Cir.1965); *Cobelfret–Cie Belge v. Samick Lines Co., Ltd.,* 542 F.Supp. 29, 31 (W.D.Wash.1982). The Court must examine whether the defendant is "engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *Seawind Compania, S.A.,* 320 F.2d at 583. "A corporation is found within the court's jurisdiction if in the recent past it has conducted commercial activity within the district and will probably continue to do so in the future." *Cobelfret–Cie Belge,* 542 F.Supp. at 31 (citing *Oregon Lumber Export Co. v. Tohto Shipping Co.,* 53 F.R.D. 351 (W.D.Wash.1970)). The cases speak in terms of whether the defendant *could have been found* within the district, *Tug GO GETTER,* 398 F.2d at 874; *Chilean Line Inc.,* 344 F.2d at 760; *Seawind Compania, S.A.,* 320 F.2d at 582, and the relevant time period is at the time of the attachment. *Constr. Exporting Enters.,* 558 F.Supp. at 1375.

■ Based on what has been presented at this point, the Court is satisfied that at the time of the attachment defendant could not be found within this district either in the sense of in personam jurisdiction or for purposes of service of process. No records in the office of the Ohio Secretary of State indicated that at the time of the attachment P.S. Int'l was incorporated in or licensed to do business in the state of Ohio, although defendant has since made application to register as a foreign corporation doing business in Ohio. Plaintiff's counsel found no listing for defendant in the Cleveland, Ohio and Columbus, Ohio white pages or yellow pages telephone directories. There is no listing for defendant in either the Ohio Business Directory or the Harris Industrial Ohio Directory. A search of the docket of this Court has not shown defendant to be a party to any action pending in this Court. Defendant claims that it has a substantial ongoing relationship with BancOhio and ongoing contracts with other Ohio businesses. According to the affidavit of defendant's secretary, Thomas Hayth, defendant engaged in transactions involving sugar with several Ohio companies and also sells potato flakes to a company in Cincinnati, Ohio. Hayth also stated that BancOhio is defendant's principal bank. The Court has thoroughly reviewed the evidence presented in light of the case law interpreting and applying the clause "found within the district," and the Court concludes that defendant's contacts within Ohio were not sufficient to establish that defendant could have been found within this district at the time of the attachment for purposes of the exercise of in personam jurisdiction.

Furthermore, even if defendant's contacts with Ohio did warrant the conclusion that defendant could have been found within this district for purposes of personal jurisdiction, it is clear that defendant could not have been found within this district at the time of the attachment for purposes of service of process. Defendant contends that attorney Thomas Hudson, of the Columbus, Ohio law firm of Luper, Wolinetz, Sheriff & Niedenthal, L.P.A., is defendant's authorized agent for acceptance of service of process within this district, and defendant attaches a copy of a letter to plaintiff's counsel Timothy A. Riedel, dated April 4, 1991, which advises Mr. Riedel of the existence of this agency relationship.

However, defendant has not alleged or shown that Mr. Hudson was its authorized agent for receipt of service of process at the time of the attachment. To the contrary, plaintiff's counsel Mr. Riedel states in his affidavit that he spoke with Mr. Hudson regarding this matter and that Mr. Hudson believes that his appointment as defendant's agent was effective on or about April 4, 1991. *Cf. Gahr Dev., Inc. of Panama v. Nedlloyd Lijnen, B.V.*, 542 F.Supp. 1224 (E.D.La.1982), *aff'd*, 723 F.2d 1190 (5th Cir.1984) (defendant did have an agent for service within the district, and had informed plaintiff of same, *prior to* seizure of defendant's vessel).

■■■ For these reasons, the Court finds that defendant could not have been found in this district at the time of the attachment, and that the April 3, 1991 attachment order was properly issued. Of course, the Court does have discretion to set aside an unfair attachment where the use of the maritime remedy is abusive, such as where an attachment is obtained unfairly in one district while a proper lawsuit could be commenced in another district without unfairness or inconvenience. *See Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119, 124 (S.D.N.Y.1979). Here, although personal jurisdiction over defendant could have been obtained over defendant in the adjoining state of Indiana, the state of defendant's incorporation, there is insufficient evidence in the record to compel the conclusion that plaintiff filed this quasi in rem action in bad faith or primarily for the purpose of harassment. "The party seeking to vacate the attachment should have the burden of proving these facts and should be deemed to have made out a prima facie case by showing that *both* the plaintiff and defendant carry on substantial and continuing business activities in another district where an in personam proceeding could have been commenced." 7A Moore's Federal Practice ¶ B.06, at B–274 (2d ed. 1988). In this case, plaintiff is an Australian corporation, and there is no evidence that plaintiff engages in any business activities in Indiana. The Court finds no impropriety in plaintiff's commencement of a quasi in rem action in this district rather than an in personam action in Indiana. "The fact that the defendant is present within an adjoining district will *not* defeat an otherwise proper attachment under Rule B." Jarvis, *supra*, at 527 (discussing *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir.1965)). Furthermore, the fact that plaintiff has filed in Indiana federal court an in rem action against the freights, including demurrage, of the M/V MORLAND does not per se require a conclusion that the present action was commenced solely to harass and embarrass defendant, even if, as defendant contends, plaintiff's primary interest in filing in this Court was to obtain security to satisfy a judgment. *Staronset Shipping, Ltd.*, 659 F.Supp. at 191. Accordingly, the Court finds defendant's motion to vacate the attachment order to be without merit.

■■ In the alternative, defendant moves the Court for an order preventing any further attachments under the terms of the attachment order. Defendant seeks to prevent plaintiff from attaching any additional funds which may be placed in defendant's BancOhio account in the future. Plaintiff has not specifically addressed this alternative request for relief. Although the Court is satisfied with the validity of the attachments which have already occurred, the Court does not believe that the same is necessarily true of any future attachments of defendant's funds which plaintiff might contemplate. Plaintiff's right to attach any additional funds of defendant in the future, as with its right to the initial attachment of the funds then contained in defendant's account at BancOhio, necessarily depends upon a showing that defendant cannot be found within the district. Defendant has now consented to the jurisdiction of this Court and has waived any challenge it may have with respect to personal jurisdiction. Additionally, defendant has authorized Mr. Hudson to serve as its agent in this district for receipt of service of process. Accordingly, at this point plaintiff can be found within this district, and there-

fore there is no basis for future attachment of defendant's property.

### CONCLUSION

Defendant's motion to vacate the attachment order is DENIED. However, defendant's alternative motion to prohibit further attachments under the terms of the Court's attachment order is GRANTED. No further attachment of defendant's property within this district is authorized under the Court's April 3, 1991 order. A copy of this order shall be served by defendant upon BancOhio and upon Meridian's trustee in bankruptcy or upon Meridian as debtor in possession.

IT IS SO ORDERED.

